UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EDWARD G. MCCUSKER,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA et al.,<br><br>        Defendants. | No. 17-CV-11334-DLC |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

CABELL, U.S.M.J.

## I.    INTRODUCTION

*Pro se* plaintiff Edward McCusker contends that he received inadequate medical care while incarcerated at the Federal Medical Center in Devens, Massachusetts (FMC Devens).[1]  He brings suit against the United States of America (USA), FMC Devens, the Federal Bureau of Prisons (BOP), and seven individuals employed by or associated with FMC Devens for violation of his Eighth Amendment rights, for medical malpractice and for infliction of emotional distress.  The defendants were served in two waves and each group has filed its own motion to dismiss.[2]  For the reasons explained

---

[1] The plaintiff was released from custody at some point after filing suit.

[2] The first wave of defendants includes the USA, FMC Devens, the BOP, Dr. Jon Hojnoski, and Nurse Darlene Shnaper.  The second wave includes FMC Devens

below, the motion to dismiss filed by the USA, FMC Devens and BOP related defendants (D.51) is ALLOWED IN PART and DENIED IN PART; the motion filed by the FMC Devens related individual defendants (D. 91) is ALLOWED.

## II.  RELEVANT FACTUAL BACKGROUND

The allegations in the complaint are taken as true for purposes of the motions to dismiss.

FMC Devens is a BOP medical facility that provides medical services to inmates.  McCusker was at all relevant times an inmate there.

Defendant Jeff Grondolsky was at all relevant times the warden at FMC Devens (Warden Grondolsky).  Defendant Julie Taylor (PA Taylor) was a Certified Physician Assistant who worked at FMC Devens as a commissioned officer of the United States Public Health Service ("PHS").  Defendant Dr. Sandra Howard was the Clinical Director at FMC Devens, and defendant Drs. Reginald Barnett, Charles Howard, and Jon Hojnoski were all physicians there. Finally, defendant Darlene Shnaper was a Registered Nurse working at FMC Devens.  (Dkt. 18, Complaint).

On June 3, 2014, another inmate assaulted and injured McCusker.  McCusker was transferred to HealthAlliance Hospital in Leominster, Massachusetts for evaluation.  Doctors there

---

Warden Jeff Grondolsky, Physician Assistant Julie Taylor, Dr. Sandra Howard, Dr. Reginald Barnett and Dr. Charles Howard.

determined that he should be transferred to the Massachusetts Eye and Ear Infirmary (Mass Eye and Ear) for a specialist consultation. A physician there noted that the plaintiff had severe swelling around his eyes, hyphema of the left eye (collection of blood inside the eye), a left orbital bone fracture, and a tear of his left iris.  The plaintiff was discharged from Mass Eye and Ear on June 4, 2014 and returned to FMC Devens.  (Compl., at 4).

Discharge instructions from Mass Eye and Ear were given to the transport officers and also were faxed to FMC Devens and received there by Dr. Sandra Howard.  The ophthalmologist prescribed the plaintiff eye drops and instructed him to take acetaminophen for pain as needed.  The discharge instructions also stated that tests for the plaintiff's interocular pressure (IOP) should be performed for three consecutive days.  They further instructed that the plaintiff should not lie flat in bed, should use ice to reduce swelling, should wear a fox shield to protect from further injury, and should be returned to Mass Eye and Ear if the pain or hyphema increased.  The discharge instructions also stated that the plaintiff should be returned to Harvard Occuplastics within a week for follow-up.  (Id. at 3-5).

Upon returning to FMC Devens on the morning of June 4, 2014, Nurse Shnaper examined the plaintiff, noted that he was in significant pain (9 out of 10), and added the discharge instructions to his chart.  (Id. at 4, 8).  Both Dr. Charles

Howard, the FMC Devens ophthalmologist, and Dr. Hojnoski reviewed and co-signed Nurse Shnaper's chart entry. (Id. at 4). Dr. Charles Howard also signed to reflect that he received the faxed discharge instructions on June 4, 2014. (Id. at 6).

The plaintiff received another examination later that afternoon from PA Taylor. The plaintiff was in his cell in the Special Housing Unit (SHU) and PA Taylor looked in through a small window. (Id. at 4, 6). PA Taylor's chart entry noted the discharge instructions and was reviewed and co-signed by Drs. Hojnoski and Charles Howard. (Id. at 4-5). She further noted that she informed the plaintiff that his swelling would subside within a few weeks. (Id. at 6). The plaintiff requested ice and pain medication, but PA Taylor told him that she could not give him those items without a doctor's order. (Id.). The plaintiff asked to see a doctor and PA Taylor said she would relay the request. (Id.).

Dr. Charles Howard conducted a follow-up examination of the plaintiff on June 9, 2014, also in the SHU.

The plaintiff was subsequently transferred to another prison in Pennsylvania and there learned of the extent of his injuries. (Dkt. 69, at 2). Among other things, the plaintiff now suffers from permanent disfiguration, vision issues, a fixed and dilated pupil, discoloration, migraines, vertigo, and chronic dizziness. (Compl., at 5-7).

## III. THE COMPLAINT[3]

The pro se complaint purports to allege thirty-four "counts" but most of these are assertions that relate to components of the complaint such as the plaintiff's damages or the relief sought. Liberally construed, the court reads the complaint as advancing two principal claims. First, it asserts a *Bivens* claim against the defendants on the ground that they were deliberately indifferent to plaintiff's serious medical needs, in violation of the Eighth Amendment.[4] Second, it alleges under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), that each defendant negligently failed to provide the plaintiff with adequate medical care, and intentionally and negligently inflicted emotional distress upon him.

## IV. LEGAL STANDARD

Of note, both parties have submitted materials outside of the complaint relating to the medical treatment the plaintiff received and efforts he made to obtain relief through the prison's grievance procedure. Under Fed. R. Civ. P. 12(b)(6), if "matters outside the pleadings are presented to and not excluded by the court, the

---

[3] The operative complaint is actually the amended complaint, but it is referred here for simplicity as the complaint.

[4] The amended complaint also cites to 42 U.S.C. § 1983, a statute creating a cause of action for violations of constitutional rights by *state* officials. *See Omran v. United States*, 2015 WL 1523587, at *7 (D. Mass. Mar. 31, 3015). That statute is not applicable here where the plaintiff asserts claims only against *federal* officials.

motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." However, filing additional materials outside the pleadings does not automatically convert the motion into one for summary judgment. Rather, "[i]f the district court chooses to ignore the supplementary materials and determines the motion under the Rule 12(b)(6) standard, no conversion occurs." *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 18-19 (1st Cir. 1992).

It is premature in the court's view to treat this matter as one for summary judgment, particularly where it is not clear that the parties agree that the materials before the court represent the entire relevant record. *See Rubert-Torres v. Hosp. San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000) (court disfavors conversion when "(1) the motion comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur") (citing *Whiting v. Maiolini*, 921 F.2d 5, 7 (1st Cir. 1990)). Accordingly, aside from materials the plaintiff submitted with his complaint, and a copy of the Standard Form 95 (SF-95) the plaintiff completed as a prelude to bringing his FTCA claim, the

court will not consider other materials and will proceed under the Rule 12(b)(6) standard.

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). The court is "not bound, however, to credit 'bald assertions, unsupportable conclusions, and opprobrious epithets' woven into the fabric of the complaint." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003) (quoting *Chongris v. Bd. Of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)). Dismissal is appropriate if the complaint fails to allege a "plausible entitlement to relief." *Rodriguez-Ortiz v. Caribe*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)). Where, as here, the plaintiff is proceeding *pro se*, the complaint will be construed liberally, and will "only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation omitted).

Under the liberal notice pleading standard established by Fed. R. Civ. P. 8(a), a plaintiff is required to submit "a short and plain statement of the claim showing that the pleader is

entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotations, citation, and punctuation omitted). Accordingly, "[p]laintiffs only are obliged to set forth in their complaint 'factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 26-27 (D. Mass. 2000) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). "While a complaint attached by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal punctuation and citations omitted). Accordingly, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

## V.  ANALYSIS

### A.  Deliberate Indifference Claim under *Bivens*

In *Bivens*, the United State Supreme Court provided an avenue for suits against federal officers acting in their individual capacities, including providing a remedy for federal inmates who,

like McCusker, contend that they received inadequate medical care in violation of their Eighth Amendment rights. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); *Carlson v. Green*, 446 U.S. 14, 20 (1980). The defendants argue as a threshold matter that McCusker should not be allowed to prosecute his claims because he did not first exhaust available administrative remedies before initiating suit.

The Prison Litigation Reform Act (PLRA) precludes "a prisoner confined in any jail, prison, or other correctional facility" from bringing an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "An inmate's complaint is subject to dismissal for failure to exhaust if the allegations in the complaint, taken as true, suffice to establish the failure to exhaust." *Facey v. Dickhaut*, 892 F. Supp. 2d 347, 354 (D. Mass. 2012) (citing *Jones*, 549 U.S. at 215). The plaintiff contends that dismissal is unwarranted because he tried to pursue his administrative remedies while in prison but was prevented from doing so by the defendants.

It is unclear whether the PLRA's exhaustion requirement, which unquestionably applied to McCusker while was an inmate, continued to apply once he was released from prison, such that it might now warrant dismissal of the complaint. The court need not reach this issue because, regardless of whether the exhaustion

requirement applies, the complaint as framed fails to state a valid *Bivens* claim against any of the defendants.

The complaint fails to assert a valid claim against the USA, FMC Devens and the BOP because they are federal agencies immune from suit, including those brought under *Bivens*. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994) (*Bivens* liability applies only to individual federal officials).

The complaint similarly fails to assert a valid claim against defendant PA Taylor because she is immune from suit as a commissioned officer in the Public Health Service. *See* 42 U.S.C. § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 812 (2010) (section 233(a) immunity "precludes *Bivens* actions against individual PHS officers or employees for harms arising out of conduct described in that section.").

With respect to the remaining individual defendants, the complaint as framed fails to assert a viable *Bivens* claim against them because it fails to allege facts sufficient to show that each defendant acted with deliberate indifference to a serious medical need.

To begin, *Bivens* provides a remedy for federal inmates asserting a violation of their Eighth Amendment rights relating to the medical care that they have received in prison. *See Carlson v. Green*, 446 U.S. 14, 20 (1980). To state a claim for relief, the inmate must allege facts showing that prison officials, with

(1) "deliberate indifference" to a substantial risk of serious harm, delayed or denied the inmate treatment for (2) a "serious medical need." *See Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Cordell v. Howard*, 879 F.Supp.2d 145, 155 (D. Mass. 2012).  For purposes of the present motion, the defendants do not dispute that the plaintiff had a serious medical need.  The salient issue therefore is whether the complaint alleges facts sufficient to show that the individual defendants were "deliberately indifferent" to that serious medical need.

In an Eighth Amendment context, deliberate indifference implies criminal recklessness or the intentional neglect of a prisoner's health or his serious medical needs.  *See Estelle*, 429 U.S. at 104.  So defined, deliberate indifference encompasses "a narrow band of conduct" and requires evidence that the failure in treatment was purposeful, although there is also no requirement that "prison administrators . . . provide care that is ideal, or of the prisoner's choosing." *Kosilek v. Spencer*, 774 F.3d 63, 82-83 (1st Cir. 2014).

Here, the overarching gravamen of the complaint is that FMC Devens staff did not follow Mass Eye and Ear's discharge instructions, which in turn caused the plaintiff to suffer permanent injuries.  This general allegation is insufficient to satisfy the plaintiff's burden of pleading facts sufficient to show that each individual defendant, through his or her own

11

individual actions, violated the plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 553 U.S. 662, 676 (2009). The plaintiff does make more specific claims against each defendant, but these claims are insufficient to rise to the level of showing deliberate indifference.

Regarding Dr. Barnett, although the complaint avers he was the plaintiff's primary physician at FMC Devens before the plaintiff was injured, the plaintiff acknowledges that Dr. Barnett was not present when the plaintiff returned from Mass Eye and Ear and was not part of the staff that provided care to him. It follows that Dr. Barnett cannot have been deliberately indifferent to the plaintiff's serious medical needs where there is no allegation that he was present or ever knew of the plaintiff's needs.

With respect to Dr. Hojnoski, the complaint alleges that he never personally evaluated the plaintiff even though he reviewed and co-signed the reports of other FMC Devens staff showing that they were not strictly following the Mass Eye and Ear discharge instructions. The plaintiff reasons that where Dr. Hojnoski knew that staff were not strictly following the discharge instructions, and yet failed to intervene, he necessarily was deliberately indifferent to the plaintiff's needs. The court follows the plaintiff's reasoning but does not find it compelling. The facts here do not suggest that Dr. Hojnoski willfully withheld any

treatment from the plaintiff.  Rather, they suggest at most that FMC Devens staff chose to follow their own course of treatment rather than to follow the one set out in the discharge instructions.  The First Circuit has held that "a claim of inadequate medical treatment which reflects no more than a disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment." *DesRosiers v. Moran*, 949 F.2d 15, 20 (1st Cir. 1991).

The claim against Dr. Charles Howard fails for the same reasons.  The complaint alleges that he knew of the plaintiff's condition and treatment by virtue of staff reports he reviewed and co-signed but yet took no steps to ensure that the plaintiff receive treatment consistent with the discharge instructions.  For the same reasons noted above, these allegations do not support a claim of deliberate indifference in violation of the Eighth Amendment.  *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Regarding Nurse Shnaper, the plaintiff concedes at the outset that she is, in his view "the least culpable," and "appears to have done her job by alerting the [doctors] of the seriousness of

[his] condition." (Compl. at 8). The plaintiff contends, however, that because she was aware of his discharge instructions, she somehow had a duty to insist to the physicians that they follow those instructions. This argument does not persuade. Even assuming Nurse Shnaper could be found to have had a duty to confront her superiors on the plaintiff's behalf, a dubious proposition, the plaintiff concedes that she conducted the first examination of the plaintiff upon his return from Mass Eye and Ear, provided proper care to him, and relayed his pain level and symptoms to Drs. Hojnoski and Charles Howard. If anything, these facts demonstrate affirmatively that Nurse Shnaper was not deliberately indifferent to the plaintiff's needs. At a minimum, they do not support a claim of deliberate indifference.

Finally, the plaintiff contends that Warden Grondolsky and Dr. Sandra Howard are liable for the staff's medical indifference based on their roles as supervisors and policymakers at FMC Devens. In the context of supervisory liability, it is well established that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (emphasis in original); *see Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 502 (1st Cir. 2011); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009); *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000). Rather, "a supervisor may not be held liable for the

constitutional violations committed by his or her subordinates, unless there is an 'affirmative link between the behavior of a subordinate and the action or inaction of the supervisor . . . such that the supervisor's conduct led inexorably to the constitutional violation.'" *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (omission in original) (quoting *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011)). One way to establish supervisory liability is to demonstrate that the supervisor formulated a policy or engaged in a custom that led to a constitutional violation. *See Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994).

Against this backdrop, the *Bivens* claim against Warden Grondolsky and Dr. Sandra Howard fails for two reasons. It fails first because, as discussed above, the complaint does not allege facts to show that any subordinate defendant violated the plaintiff's constitutional rights. And even if it did, those facts do not show a link between any action or inaction the supervisor defendants took and the allegedly inadequate care the plaintiff received.

To be sure, the plaintiff alleges that these defendants promulgated the policy that prevented PA Taylor from providing the plaintiff with ice and other recommended treatment absent permission from her superiors. But even if so, the policy did nothing more than establish a protocol to ensure that patients

receive physician-approved care. Arguably, the policy in this instance fortuitously led to a moment where PA Taylor was unable to act consistent with the discharge instructions because she did not have a physician's approval, but the policy itself did not inexorably lead to this result where it did not compel or encourage any staff person to act with deliberate indifference. If for example PA Taylor had been able to obtain a physician's approval and offer McCusker the care he sought, no one would argue that the policy was inclined to deprive patients of care in violation of the Eighth Amendment. Moreover, there is no allegation that the policy had led to issues in the past or that either defendant had any basis to know that the policy might impede PA Taylor from acting consistent with the discharge instructions. The complaint thus fails to assert a valid *Bivens* claim against Warden Grondolsky or Dr. Sandra Howard on the basis of supervisory liability. *Id.* (to prove causal connection between supervisor's conduct and constitutional violation, plaintiff must show that "the supervisor knew of, overtly or tacitly approved of, or purposely disregarded" the violative conduct or that "there exists a known history of widespread abuse sufficient to alert a supervisor of ongoing violations"); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (holding in analogous section 1983 context that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability").

### B.   FTCA Claims

"In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees." *F.D.I.C. v. Meyer,* 510 U.S. at 475-76.   The FTCA's waiver provides "subject matter jurisdiction for plaintiffs to pursue state law tort claims against the United States."   28 U.S.C. § 1346(b)(1).   "Section 1346(b) [of the FTCA] grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and 'render[ed]' itself liable." *Meyer*, 510 U.S. at 477, (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)).   "A claim comes within this jurisdictional grant" only if it is:   "(1) against the United States, (2) for money damages, ... (3) for injury or loss of property, or personal injury or death (4) caused by the negligent or wrongful act or omission of any employee of the Government (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* (quoting 28 U.S.C. § 1346(b)).   If a claim fails to satisfy these six elements, it is not "cognizable" under § 1346(b) and does not fall within the FTCA's "jurisdictional grant." *Id.*

In this case, and as noted above, the court construes the complaint as alleging tort claims of (1) negligence/malpractice, (2) intentional infliction of emotional distress (IIED) and (3) negligent infliction of emotional distress (NIED).  It is not clear whether the plaintiff purports to advance these claims against all defendants, but the only proper defendant in an FTCA claim for monetary damages is the United States.  *ITT Fed. Servs. Corp. v. Anduze Montano*, 474 F.3d 32, 33 (1st Cir. 2007); *McCloskey v. Mueller*, 446 F.3d 262, 265 (1st Cir. 2006).  Accordingly, the FTCA claims are dismissed with respect to any defendant other than the USA.

Focusing then on the USA, it argues that it too should be dismissed because the plaintiff failed to first present his case to a state medical malpractice tribunal as required by M.G.L. c. 231, § 60B.  This argument has no force.  While M.G.L. c. 231, § 60B does require a plaintiff to present his case for medical malpractice to a tribunal[5] before litigating the claim in court, courts in this district confronted with plaintiffs who may have

---

[5] The tribunal consists of a single justice of the Massachusetts Superior Court, a physician, and an attorney authorized to practice in Massachusetts. *See* M.G.L. ch. 231, § 60B.  The plaintiff must offer proof of evidence supporting his claim at a hearing before the tribunal.  Id.  The tribunal then determines "if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result."  Id.  Regardless of the tribunal's decision, the plaintiff may proceed with his litigation.  However, if the tribunal does not decide in his favor, the plaintiff will be required to file a bond with the court, which will be forfeited to the defendants should they prevail.  Id.

jumped the gun have tended to address the gaffe by staying rather than dismissing the litigation, and referring the malpractice claim to the tribunal. *See e.g., Wittkowski v. Spencer*, 249 F. Supp. 3d 582 (D. Mass. 2017); *Black v. United States*, No. 11-12128-RGS, 2012 WL 3201677 (D. Mass. Aug. 3, 2012); *Rua v. Glodis*, No. 10-40251-FDS, 2012 WL 2244817 (D. Mass. June 14, 2012); *Joseph v. Sweet*, 125 F. Supp. 2d 573 (D. Mass. 2000); *Feinstein v. Mass. Gen. Hosp.*, 643 F.2d 880 (1st Cir. 1981).  That is how this court would intend to proceed.

To be sure, the government argues independently that the tort claims cannot go forward because the plaintiff failed to provide a sum certain for damages on his administrative claim form (the SF-95).  A party bringing an FTCA action must have first presented an administrative claim specifying a sum certain of damages with the agency being sued.  *See e.g., Holloway v. United States*, 845 F.3d 487, 489-90 (1st Cir. 2017); *Hoffenberg v. United States*, 504 Fed. Appx. 81, 83 (3d Cir. 2012).  "The purpose behind the sum-certain requirement is to tip the government off as to its 'possible liability' so it can 'investigate the alleged negligent episode' to see 'if settlement would be in the best interests of all.'"  *Holloway*, 845 F.3d at 489-90 (quoting *Coska v. United States*, 114 F.3d 319, 322 (1st Cir. 1997) (internal quotations marks omitted)).  But the First Circuit "approaches the notice requirement leniently, 'recognizing that individuals wishing to

sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims.'" *Santiago-Ramirez v. Sec'y of Dep't of Def.*, 984 F.2d 16, 19 (1st Cir. 1993) (quoting *López v. United States*, 758 F.2d 806, 809 (1st Cir. 1985)).

The government contends that because the plaintiff did not provide a sum in box 12d of the SF-95, he has failed to state a sum certain of damages.  The government seeks to create an issue that is not there.  The SF-95 instructs a claimant to provide a sum certain for the claimed "property damage" (12a), "personal injury" (12b), and "wrongful death" (12c).  Following these three boxes, it (implicitly) instructs the claimant to add these amounts and to list the "total" amount in box 12d.  Here, although the plaintiff did not list any amounts in boxes 12a, 12c or 12d, he did list a sum certain of three million dollars for personal injury in box 12b.  To this court, it is clear in context that the plaintiff claims a total sum of three million dollars.  The court finds therefore that the plaintiff has stated a sum certain sufficient to place the government on notice of his FTCA claims.

Focusing then on the specific tort claims, the court as presaged above will stay the case subject to the plaintiff's presentation of his medical malpractice claim to the tribunal.

With respect to the emotional distress claims, the court finds that the complaint fails to state a viable IIED claim but does state a valid NIED claim.

With respect to the IIED claim, a complaint seeking to survive a Rule 12(b)(6) motion must allege facts sufficient to show that the complained-of incident "was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976)) (internal quotation marks omitted).  Taking the plaintiff's allegations are true, his claims that the FMC Devens staff failed to provide him adequate medical care by treating him in ways other than those suggested by Mass Eye and Ear suggest negligence but do not meet the rigorous prerequisite for a prima facie case of intentional infliction of emotional distress.

By contrast, to state a viable NIED claim a plaintiff must merely allege facts sufficient to show (1) negligence, (2) emotional distress, (3) causation, (4) physical harm manifested by objective symptomology, and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.  *Smith v. City of Boston*, No. 03-cv-10062-DPW, 2004 WL 1572626, at *11 (D. Mass. July 13, 2004) (citing *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)).  Here, the plaintiff alleges that his permanent disfiguration, vision issues, chronic

migraines, and vertigo all resulted from the defendants' purported negligent care and caused him to suffer from PTSD and other emotional distress. That is sufficient to state a valid claim for relief.

## VI. CONCLUSION

For the foregoing reasons, the plaintiff's FTCA claims for medical malpractice and NIED may go forward, but only against the USA. All other claims are dismissed, against all defendants. The court will stay the case subject to the plaintiff's presentation of the malpractice claim to a tribunal.


*SO ORDERED.*

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  June 24, 2019